Christopher S. LAWRENCE,
Petitioner–Appellant,

v.

C.M. LENSING, Warden, Hunt Correctional Center, and Richard P. Ieyoub, Attorney General, State of Louisiana, Respondents–Appellees.

No. 94–30221
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 28, 1994.

Rehearing Denied Feb. 27, 1995.

Christopher Lawrence, pro se.

Kim M. Graham, David Lawrence Arena, Asst. Dist. Attys., New Orleans, LA, for appellees.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Christopher S. Lawrence (Lawrence) appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.

## Facts and Proceedings Below

On March 5, 1991, after a two-day trial, a Louisiana jury found Lawrence guilty of forcible rape in violation of LSA–RS 14:42.1

and of attempted aggravated crime against nature in violation of LSA–RS 14:27 and 14:89.1. Lawrence was sentenced to thirty years at hard labor without benefit of probation, parole, or suspension of sentence for the first two years on the forcible rape count and to ten years at hard labor on the attempted aggravated crime against nature count, to be served concurrently. On appeal, the Louisiana Fourth Circuit Court of Appeal affirmed Lawrence's convictions but remanded the case for resentencing on the attempted aggravated crime against nature count. *State v. Lawrence*, 610 So.2d 287 (La.App. 4th Cir.1992) (table). The trial court then resentenced Lawrence to five years at hard labor on that count, to run concurrently with the forcible rape sentence. Lawrence applied for a writ to the Louisiana Supreme Court, which was denied. *State v. Lawrence*, 617 So.2d 931 (La.1993), *reconsideration denied*, 620 So.2d 862 (La.1993).

In a subsequent writ application to the Louisiana Fourth Circuit Court of Appeal, Lawrence asserted that he was prejudiced in his appeal to that court because page 151 of the trial transcript was not made part of the appellate record. The Fourth Circuit granted Lawrence's writ and ordered the court reporter to provide him with page 151 of the transcript.[1] Lawrence then filed another writ application with the Fourth Circuit, which was denied.

Lawrence subsequently filed this petition in the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the prosecutor had failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that he was prejudiced on appeal because page 151 of the trial transcript was not made part of the appellate record, and that he was entitled to an evidentiary hearing. The district court denied his petition for habeas relief, determining that Lawrence could not establish a *Brady* violation and that his right to appeal argument was meritless. The district court granted a

certificate of probable cause, and this appeal ensued.

**Discussion**

I. *Brady* Claim

▇ Lawrence argues that the prosecution failed to disclose to the defense a "route sheet" prepared by Dr. Leslie Kram, the emergency room physician who examined the victim. Lawrence contends that the victim's trial testimony differed from her version of the events as documented in the route sheet, and that pretrial disclosure of the route sheet would have enabled the defense to impeach the victim's testimony. The prosecution, however, elicited the contents of this route sheet during its direct examination of Dr. Kram:

"Q. And ma'am, what is a route sheet?

A. A route sheet is a legal document we generate any time a patient comes to the hospital and is seen in the Emergency Room.

Q. And did you do a route sheet in this particular case?

A. Yes, we did.

Q. And what information did you receive for your route sheet?

A. Well, my route sheet, I use basically to take history because the Rape Kit doesn't allow me that much room to put down what was told me by the patient in specifics. My route sheet, I basically wrote down what the patient told me in a narrative fashion.

BY MR. LAWRENCE [Lawrence's attorney]: Excuse me, Your Honor. I have not seen this.

BY THE COURT: Would you be kind enough to show it to opposing counsel?

BY MR. JORDAN [the prosecutor]: Yes, Your Honor, as State's Exhibit No. 11.

Q: Doctor, without looking at your route sheet, could you give the Jury the general gist of what you put on the route sheet?

A: Essentially that [the victim] had been waiting at the bus stop to catch a ride.

---

1. A review of the trial transcript reveals that page 151 was made part of the state court record but had been mislabelled as page 156.

She saw a male who she said she had seen on the Campus and around town before. She didn't know him by name. He pulled over and asked her if she wanted a ride home. She said Yes. She said in the car he said he needed to stop at his house and get some money foe [sic] gas. She said they stopped at his house. She felt a little uncomfortable, but she did go in and she said once inside, that she was basically barred from leaving the house."

At trial, the victim testified that she was waiting at the bus stop when Lawrence approached her on foot, initiated a conversation with her, and offered her a ride home. During their conversation, Lawrence told the victim that he had some work left to do at the Big Easy, a nightclub where he was employed. The victim testified that she accompanied Lawrence to the Big Easy where she got something to eat and a soda. Subsequently, the manager of the Big Easy drove her and Lawrence to Lawrence's apartment. Lawrence said that he needed to get his car keys from his apartment and offered her a drink of water. She stated that she accepted his offer of a glass of water, entered his apartment, and the sexual assault then ensued. The victim also testified that she did not mention going to the Big Easy with Lawrence in her initial account of the incident to police. She stated that she thought she "should stick to the most important things," but that she informed the police two days later about the Big Easy. In cross-examining the victim, defense counsel emphasized the inconsistencies between her initial account of the incident and her trial testimony.

■ *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requires that the prosecution disclose to the defense both exculpatory evidence and evidence that would be useful for impeachment. *United States v. Bagley,* 473 U.S. 667, 675–76, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). To prevail on his *Brady* claim, Lawrence must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *Drew v. Collins,* 964 F.2d 411, 419 (5th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct.

3044, 125 L.Ed.2d 730 (1993). The district court held that Lawrence's allegations failed to satisfy the materiality standard required to state a *Brady* claim. *See Bagley,* 473 U.S. at 680–82, 105 S.Ct. at 3383 ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.").

While we agree with the district court's plainly correct holding that Lawrence failed to satisfy the materiality standard, we also hold that Lawrence cannot allege a *Brady* violation because the prosecution did not suppress any evidence. *Brady* claims involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). Because we find that the existence and contents of the route sheet were disclosed at trial, we hold that the prosecution did not suppress any evidence. *See United States v. Zackson,* 6 F.3d 911, 918 (2d Cir.1993) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.") (citation and internal quotation marks omitted); *United States v. McKinney,* 758 F.2d 1036, 1049–50 (5th Cir.1985) (holding that the prosecution did not suppress evidence where *Brady* materials were disclosed at trial and reasoning that "[i]f the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have, and indeed, should have been"). *See also United States v. Randall,* 887 F.2d 1262, 1269 (5th Cir.1989); *United States v. Mitchell,* 777 F.2d 248, 255 (5th Cir.1985).

In *United States v. Dunnigan,* 944 F.2d 178 (4th Cir.1991), *rev'd on other grounds,* —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the prosecution elicited the fact that one of its key witnesses was a paranoid schizophrenic and heroin addict at the close of his direct testimony. Defense counsel protested that it was surprised by this revelation and asserted that its impeachment of the witness would be hampered by

the government's failure to disclose this information prior to trial. In response, the district court advised defendant that the witness's schizophrenia and addiction could be explored on cross-examination, a suggestion defense counsel ignored. On appeal, the Fourth Circuit rejected the defendant's *Brady* claim, stressing that the defendant did not request a continuance. *Id.* at 182. Moreover, the court observed, "though the exculpatory evidence may not have been presented as fully as Dunnigan would have liked (though she does not say what she would now offer), the jury did in fact hear it." *Id.*[2] Similarly, the jury in Lawrence's case heard Dr. Kram testify about the version of the victim's account contained in the route sheet.[3]

Upon learning of the existence of the route sheet at trial, Lawrence could have moved for a recess or continuance in order to prepare his impeachment of the victim. *See, e.g., United States v. Kelly,* 14 F.3d 1169, 1176 (7th Cir.1994) ("In situations ... in which a *Brady* disclosure is made during trial, the defendant can seek a continuance of the trial to allow the defense to examine or investigate...."). Because the prosecution did not suppress any evidence, Lawrence cannot convert his tactical decision not to seek a recess or continuance into a *Brady* claim in this habeas petition.

## II. Right to Appeal Claim

■ Lawrence claims that he was prejudiced in appealing his case to the Louisiana Fourth Circuit Court of Appeal because page 151 of the trial transcript was not made part of the record and that this constituted a denial of his right to appeal. He asserts that he suffered prejudice because the Louisiana appellate court determined that his failure to raise a contemporaneous objection precluded review of the *Brady* issue, and that page 151 of the trial transcript would have demonstrated that defense counsel objected during Dr. Kram's testimony.[4]

■ The United States Constitution does not generally mandate the right to appeal a criminal conviction. *Griffin v. Illinois,* 351 U.S. 12, 19–21, 76 S.Ct. 585, 591–92, 100 L.Ed. 891 (1956). Louisiana, however, provides convicted defendants with a statutory right to appeal. LSA–C.Cr.P. art. 912.1. A state prisoner seeking federal court review of his conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right. *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir.1993). It is questionable that Lawrence's right to appeal argument raises a federal constitutional claim. In any event, a review of the trial transcript reveals that page 151 was made part of the state court record but was mislabelled as page 156. Furthermore, defense counsel made no objection to Dr. Kram's testimony on page 151. Accordingly, we find Lawrence's argument without merit.

## III. Evidentiary Hearing

■ Lawrence's last contention is that he is entitled to an evidentiary hearing in the

---

**2.** The court suggested that the defendant might "have a better argument if the government had withheld the information from the jury." *Id.*

**3.** Lawrence complains about two discrepancies between the victim's account in the route sheet and her trial testimony. First, the victim did not mention the stop at the Big Easy in her statement contained in the route sheet. As the district court observed, the trial transcript reflects that defense counsel was aware that the victim gave inconsistent statements as to whether they went directly to Lawrence's apartment or whether they went to the Big Easy first. The victim explained why she did not mention the Big Easy in her initial account. Moreover, defense counsel cross-examined the victim on this inconsistency.

The second discrepancy is that the victim initially said that Lawrence went to his apartment to get some gas money, but at trial, the victim testified that he went into his apartment to get his car keys. While testifying about the contents of the route sheet, Dr. Kram recounted the victim's statement that they went into Lawrence's apartment to get money for gas. The district court also noted that this discrepancy was known to the defense prior to trial because defense counsel had a copy of the application for the search warrant for Lawrence's apartment. This application indicated that the victim told the police that Lawrence brought her to his apartment under the pretext of getting money.

**4.** Although the Louisiana Fourth Circuit Court of Appeal found that Lawrence had failed to raise a contemporaneous objection, the court nevertheless addressed his claim on the merits and found that he had suffered no prejudice. We agree.

district court. An evidentiary hearing is not "required when the record is complete or the petitioner raised only legal claims that can be resolved without the taking of additional evidence." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989). Based on our review of the record, we hold that no evidentiary hearing was required.

### Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.