UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

June 1, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

No. 05-1616

| | |
|---|---|
| STACEY MILLER,<br>　　　　*Petitioner-Appellant*,<br><br>　　　*v.*<br><br>UNITED STATES OF AMERICA,<br>　　　　*Respondent-Appellee*. | Appeal from the United States District Court for the Western District of Wisconsin.<br><br>No. 04 C 527<br><br>Barbara B. Crabb,<br>　*Chief Judge*. |

### O R D E R

Judge William J. Bauer and Judge Richard A. Posner summarily AFFIRM and adopt as their own the attached opinion and order of the district court dated December 29, 2004, and the orders dated March 8, 2005.  Judge Kenneth F. Ripple's dissent is also attached.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

Plaintiff,

OPINION AND ORDER

04-C-0527-C
01-CR-0071-C-02

v.

STACEY MILLER,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendant Stacey Miller's motion, filed pursuant to 28 U.S.C. § 2255, is before the court following the completion of briefing on the motion. When defendant filed the motion, he set out 31 grounds in support of his motion. (The grounds are numbered 1 through 32, but there is no #20.) I dismissed #32 because it relates to defendant's contention that the court sentenced him unconstitutionally by relying on facts not found by a jury beyond a reasonable doubt in violation of Blakely v. Washington, 124 S. Ct. 2531 (2004). I held that it was premature to raise this claim because the United States Supreme Court has not decided whether the holding in Blakely applies to federal cases. See Aug. 5, 2004 Order, dkt. #139.) The remaining 30 claims are summarized as follows:

1. Defendant was denied a fair trial when police officer Twing pressured his

1

Copy of this document has been
provided to: S. Miller
E Anty Vaudreu
this 29 day of Dec, 20 04
by S. Vogel
S. Vogel, Secretary to
Judge Barbara B. Crabb

subordinate, Gonzales, to make a false identification of defendant.

2. Defendant was denied a fair trial when officer Twing showed Gonzales a second single person photo array (after he had failed to identify defendant from an earlier array) that was impermissibly suggestive and substantively unreliable.

3. The government engaged in prosecutorial misconduct when it failed to preserve the police notes of officer Twing and produce them upon request.

4. The government engaged in prosecutorial misconduct when it failed to produce surveillance photos, notes and reports concerning defendant's co-defendant Mark Winfield's apartment showing his daily visitors.

5. The government coerced Winfield into fabricating testimony depicting defendant as a drug dealer.

6. The government's prosecution of defendant was undertaken in retaliation for his refusal to become a police informant and his petitioning the police to cease their harassment of him.

7. The court denied defendant a fair trial by failing to grant him a third continuance when his backup counsel was not prepared to represent him.

8. The court denied defendant equal protection when it refused to grant a third continuance in a situation in which it would have give a Caucasian defendant a continuance.

9. The court denied defendant a fair trial when it refused to hold a photo lineup to

2

give him an opportunity to show that Gonzales had misidentified him.

10. The government denied defendant a fair trial when it knowingly elicited false testimony from its witnesses.

11. The government interfered with defendant's right to present witnesses favorable to him by intimidating his witnesses with threats of prosecution for perjury if they testified falsely.

12. The court denied defendant his right to effective counsel when it failed either to grant a continuance or to appoint counsel that would have been prepared for trial.

13. The government engaged in misconduct when it used Fed. R. Evid. 404(b) evidence against defendant after having waived its right to do so at the October pretrial conference.

14. The government engaged in misconduct when it failed to divulge witness Twing's penchant for testifying falsely about things defendant never told him.

15. The government deprived defendant of a fair trial when it used its examinations of witnesses and closing statement to intimate that defendant had fabricated his alibi witness testimony.

16. The court denied defendant his rights under the confrontation clause when it refused to grant defense counsel a continuance to prepare for her cross-examination of the government's witnesses.

3

17. The court denied defendant his right to present a defense when it refused to permit three additional alibi witnesses to testify because defense counsel had failed to identify them in the time allotted to him.

18. The court denied him his right to testify in his own behalf when it refused to give his defense counsel time to consult with defendant to develop his strategy for his defense.

19. The government's failure to divulge the fact that the cocaine base contained over 75% unusable material was a violation of Brady.

20. [omitted by defendant].

21. The court violated its obligations under Fed. R. Crim. P. 32 when it did not give detailed findings regarding defendant's objections to the drug quantities for which he was held responsible under the sentencing guidelines.

22. The government did not meet its burden of proof on defendant's relevant conduct.

23. The government's failure to meet its burden of proof on defendant's relevant conduct was a violation of Apprendi.

24. The court misinterpreted the sentencing guidelines when it enhanced defendant's sentence for conduct uncharged in the indictment.

25. The court violated U.S.S.G. § 3C1.1 when it enhanced defendant's sentence for obstruction of justice after finding that defendant had tried to present untruthful alibi

4

witnesses.

26. Defendant's counsel failed to subpoena police and civilian records to prove that the case against him was fabricated in retaliation for his refusal to become an informant.

27. Defendant's trial counsel gave defendant ineffective assistance and deprived him of a fair trial.

28. Defendant's trial counsel gave him ineffective assistance at sentencing when she failed to call witnesses who could testify about the makeup of the cocaine base.

29. Defendant's appellate counsel was ineffective in failing to investigate or raise legally significant issues and to keep defendant informed of the status of the appeal.

30. The court violated defendant's right to present an alibi defense by punishing him with a sentence enhancement for presenting perjured testimony.

31. The government failed to seek a reduction in defendant's sentence under Fed. R. Crim. P. 35 or U.S.S.G. § 5K1.1 as it had promised.

I conclude that defendant cannot proceed on any of these claims. Some are barred because he raised them on his direct appeal; some are barred because he could have raised them on direct appeal and chose not to; and the majority are barred because defendant has not supported them with specific evidence but has merely set out conclusory and self-serving allegations.

5

## BACKGROUND

Defendant was charged in an indictment returned on June 28, 2001, with one count of distributing five grams or more of cocaine base with co-defendant Mark Winfield and one count of distributing five grams or more of cocaine base himself. The court appointed James Cooley to represent defendant and set a trial date for November 19, 2001.

On September 27, 2001, the government filed an alibi notice demand pursuant to Fed. R. Crim. P. 12.1. Defendant filed certain pretrial motions, including one to suppress any in-court identification of him by the undercover police officer and another to bar the government from using the out-of-court identifications. He filed his notice of alibi on October 10, 2001, naming Carleton Higgins as an alibi witness; on November 5, 2001, he filed an amended notice, naming Robert Morgan as another alibi witness and said that both witnesses would confirm that he was in Chicago, Illinois between 3:00 and 5:00 p.m. on May 10, 2001, when the critical drug transaction was occurring in Madison, Wisconsin.

On November 19, 2001, with prospective jurors in the courthouse, Cooley advised the court that he was too ill to proceed with the case on that date. The trial was set over to December 10, 2001. On December 4, counsel asked for another postponement, which was granted on the condition that Cooley arrange for backup counsel who would be prepared to go forward with defendant's representation if Cooley became ill again.

Trial was set to begin on January 28, 2002. Backup counsel Krista Ralston appeared

on defendant's behalf to say that Cooley was ill again and that she did not believe she was adequately prepared to handle the trial in his stead. The court denied the motion for a third continuance; the trial went forward with Ralston representing defendant. At the end of the second day of trial, the jury returned a verdict of guilty and found that defendant had been responsible for the distribution of more than five grams of cocaine base.

The evidence at trial included testimony from co-defendant Mark Winfield, who described his involvement with defendant in the distribution of crack cocaine; police officer Bernard Gonzales, who had spent long periods of time with defendant while operating in an undercover capacity; police officer Jeff Twing, the case manager for the investigation of defendant, who testified about his surveillance of defendant during drug buys by Gonzales and, on rebuttal, about his interview of defendant's alibi witness, Robert Morgan; and two representatives of wireless phone companies, who testified about calls made on cell phones to numbers used by defendant and his co-defendant. Defendant called as witnesses his sister, Sheneka Ware; Joseph Bryan, who testified that while he was in the Dane County jail, he heard Mark Winfield tell defendant that Winfield was going to tell the truth and testify that defendant was not at the house when the drug deal took place, but that he was going to wait until the government offered him a plea bargain; and alibi witness Robert Morgan, who testified that he had seen defendant in Chicago at defendant's mother's house in the morning and afternoon on May 10, 2001 and again the next morning.

Defendant was sentenced on April 12, 2002. His criminal category was VI. With more than 5 grams of cocaine as proved conduct and an upward adjustment for obstruction of justice (presenting a false alibi), his offense level was 38 and his guideline range was 360 months to life. (Without any enhancement for obstruction of justice, defendant would have had an offense level of 37 as a career offender and a guideline range of 360 months to life.) He was sentenced to 400 months. He filed a timely notice of appeal on April 26, 2002, arguing that the denial of his request for a third continuance was a denial of his right to a fair trial. Originally, he raised the question of the ineffectiveness of counsel; at oral argument, he decided to save the issue for his post-conviction motion. The court of appeals affirmed his conviction, finding that the denial of the motion for a third continuance was not an abuse of discretion and not a denial of defendant's right to a fair trial.

OPINION

Section 2255 motions are not intended to be substitutes for direct appeals or as a means of appealing the same issues a second time. As a general rule, they are to be used only for raising alleged errors of law that are jurisdictional or constitutional in nature or that amount to a fundamental defect that results in a complete miscarriage of justice. Reed v. Farley, 512 U.S. 339, 353-54 (1994). They cannot be used for issues that were raised on direct appeal in the absence of changed circumstances, for non-constitutional issues that

could have been raised on direct appeal but were not or for constitutional issues that were not raised on direct appeal, unless the movant can establish cause for the default as well as actual prejudice from the failure to appeal. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996).

Defendant's claims numbered 7, 12, 16 and 18 are all aspects of his contention that he should not have been denied his request for a third continuance. Defendant raised this issue on direct appeal and it was decided against him. He cannot reargue it in this motion. He raises a variant of this claim (#8), alleging that the court would not have denied the continuance had he been Caucasian. It is arguable that he could not have raised this claim on direct appeal because its determination would rest on evidence that would not be part of the trial record. However, it is unnecessary to decide whether he should be able to raise it on this motion because he has no evidence to support the claim. He merely alleges that the court gives different treatment to members of different races. He does not set forth any facts that would support his allegation. Mere speculation does not warrant relief or even an evidentiary hearing. Galbraith v. United States, 313 F.3d 1001 (7th Cir. 2002) (in order to show need for evidentiary hearing, § 2255 movant must file detailed and specific affidavit showing he has actual proof of allegations he is making).

Defendant's claims 1, 2 and 9 relate to alleged deficiencies in the procedure used to identify him. Defendant had a full evidentiary hearing on these issues but never raised them

on direct appeal. He has suggested no reason why he could not have raised them, other than to say that his appointed appellate counsel did not listen to him. This statement falls short of establishing cause for the default, even if he could establish that the identification process deprived him of a constitutional right.

Claims 3, 4, 5, 6, 10, 11, 13 and 14 relate to defendant's allegations that "the government" engaged in various forms of misconduct. None of these allegations are supported by any evidence or even any specific allegations so as to trigger a need for an evidentiary hearing. As I have noted, mere unsupported assertions are not sufficient to require an evidentiary hearing. Galbraith, 313 F.3d at 1001. As to claim #5, moreover, which relates to alleged governmental coercion of co-defendant Winfield to testify falsely, defendant's counsel cross-examined Winfield at depth about his reasons for testifying, including his hope that he would get a shorter sentence in return for testifying against defendant.

Defendant's claim #15 is that the government deprived him of a fair trial when it used its examinations of witnesses and its closing statement to intimate that defendant had fabricated his alibi witness testimony. The government's statements were well within the bounds of propriety. It is permissible for a prosecutor to cross-examine alibi witnesses and then to argue that they are not believable because of discrepancies in their testimony or, as in the case of defendant's alibi witness, because of his admission that if defendant had asked

10

him to lie, he would not admit that fact under oath.

In claim #17, defendant alleges that he was denied a fair trial when the court refused to permit three additional alibi witnesses to testify because trial counsel had failed to identify them. Defendant could have raised this claim on direct appeal. He does not explain why he did not. Thus, even if it were a potential constitutional violation to be deprived of the testimony of witnesses he wanted, rather than a matter of interpretation of a rule of procedure, defendant has not shown the necessary cause and prejudice he must show if he wishes to raise this issue in his § 2255 motion.

Defendant's claims numbered 19, 21, 22, 23, 24, 25 and 30 relate to his sentencing. As a general rule, challenges to sentencing issues cannot be raised in a motion pursuant to § 2255. Scott v. United States, 997 F.2d 340 (7th Cir. 1993). Rarely does a dispute over the application of the guidelines implicate a jurisdictional or constitutional error of law or constitute a fundamental defect resulting in a complete miscarriage of justice. Certainly, the issues that defendant has raised do not rise to that level. In claim #19, for example, defendant challenges the government's failure to divulge the non-usable part of the cocaine base for which he was held responsible. Not only is this not a constitutional issue, it is not even an issue under the guidelines, which provide that the weight of a controlled substance set forth in the sentencing guidelines tables includes the "entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1,

Notes to Drug Quantity Table (A). Defendant may think that he has a right to be sentenced only for the actual amount of controlled substance he possessed but the sentencing commission does not agree. Therefore, even if the government had been required to advise defendant of the composition of the mixture, its failure to do so did not change anything for defendant. He would still have been sentenced on the basis of the entire weight of the mixture containing the crack cocaine.

Defendant's other sentencing claims require little comment, particularly in light of the fact that defendant conceded before sentencing that he had a guideline level of 37, a criminal history of VI and a guideline imprisonment range of 360 months to life. It was not a misinterpretation of the guidelines to enhance defendant's sentence for conduct that had not been charged (#24) because the guidelines give the courts specific authority to consider relevant uncharged conduct. It was not error for the court to omit specific findings on drug amounts when defendant's co-defendant had stipulated to the amount for which defendant was held accountable (#21). Even if it was error, defendant would not be entitled to a shorter sentence because his career offender status put him in level 37, with or without the drug amounts. The same conclusion applies to defendant's assertions that the government did not meet its burden of proof on his relevant conduct (#22) and that the court violated the guidelines in enhancing his sentence for obstruction of justice (#25). As to defendant's assertion that the government violated the holding of Apprendi v. New Jersey, 530 U.S. 466

12

(2000), the jury found beyond a reasonable doubt that defendant had been responsible for the distribution of more than five grams of cocaine, thus removing any question of compliance with Apprendi. Apprendi requires jury findings only when the finding would affect the *statutory* maximum applicable to a defendant, not to the sentencing guideline level that could be applied.

As to defendant's last sentencing claim, #30, that the court violated his right to present an alibi defense by punishing him with a sentence enhancement for presenting perjured testimony, defendant has a right to present alibi witnesses but no right to present false testimony from those witnesses. Giving him a sentence enhancement for suborning perjury is no more a violation of his rights than giving him an enhancement for giving perjured testimony himself. United States v. Dunnigan, 507 U.S. 87 (1993) (holding that potential enhancement of sentence for testifying falsely is not violation of defendant's right to testify).

Defendant's claims 26-29 relate to his assertion that both his trial counsel and his appellate counsel were ineffective as a matter of law. Claim #28 relates to the makeup of the cocaine base; because the composition of the cocaine base is irrelevant in sentencing, as explained above, it was not ineffective assistance for defendant's trial counsel to fail to call witnesses to testify on this issue. The other three claims are unsupported by any specific assertions. Defendant has not filed an affidavit setting forth with precision exactly what his

13

counsel did or failed to do that made a difference in the outcome of the proceedings. He asserts that his trial counsel failed to develop proof of the government's retaliatory motive against him but he has not met his burden of showing what form that proof would have taken. Hardamon v. United States, 319 F.3d 943, 951 (7th Cir. 2003).

To establish ineffectiveness of counsel, defendant must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial. Massaro v. United States, 538 U.S. 500, 505 (2003). The presumption is that defense counsel has rendered adequate assistance and exercised her reasonable professional judgment in making decisions about trial strategy. Defendant has not made the necessary showing that his counsel made errors so serious that she was not functioning as the counsel guaranteed him under the Sixth Amendment. Strickland v. Washington, 466 U.S. 680, 688 (1984). Although he asserts that trial counsel failed to subpoena helpful witnesses for the trial and for the sentencing, he has not provided sufficiently precise information of what those witnesses would have contributed to the proceedings. Hardamon, 319 F.3d at 951.

Finally, in claim #30, defendant contends that the government failed to seek the reduction of defendant's sentence that it had promised him for his substantial assistance. The simple contention that the government failed to carry out its promise of a sentencing recommendation is not one that defendant can pursue on a motion for post-conviction relief. "A defendant has no constitutionally protected right to a downward departure based on

14

alleged substantial assistance to the government." <u>United States v. Kelly</u>, 14 F.3d 1169, 1177 (7th Cir. 1994). Because the defendant has no right to a departure, the court cannot require the government to file a motion for a reduced sentence under either U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35(b). An exception exists if the defendant can show that the government's refusal to act is motivated by an unconstitutional reason such as racial discrimination. The government's power is "subject to constitutional limitations that district courts can enforce." <u>Wade v. United States</u>, 504 U.S. 181, 185 (1992). However, "'the burden is on the defendant to make a substantial threshold showing [of unconstitutional motive] before he becomes entitled to an evidentiary hearing on the matter.'" <u>United States v. Carter</u>, 122 F.3d 469, 476 (7th Cir. 1997) (quoting <u>Kelly</u>, 14 F.3d at 1177-78). Defendant has made no showing that unconstitutional motives tainted the government's decision to withdraw its motion for a sentencing reduction.

One additional matter remains. On December 13, 2004, long after the time for briefing had expired, defendant filed a request for submission of certain affidavits in support of his § 2255 motion. The request will be denied for untimeliness, but the affidavits would have not have changed the outcome of this motion. The affidavits of Krista Ralston and James Cooley are insufficient to show that defendant received constitutionally ineffective representation; the affidavits of defendant's friend Jacqueline Pollard and his sister Sheneka Davis are not specific and are based in large part on hearsay. Defendant's own affidavit

15

focuses on his appellate counsel and his alleged deficiencies but says only that he asked counsel to raise the obstruction of justice enhancement, the drug quantity determination, the lack of a prior identification procedure and "the deficiencies in the indictment." (Defendant has never alleged that the indictment was deficient in any respect and he does not explain in his affidavit what these deficiencies might be.) As I have explained, neither the obstruction of justice enhancement nor the drug quantity determination are matters that can be raised in a § 2255 motion, even if defendant could show cause for the failure to raise them on direct appeal. In any event, neither determination would entitled defendant to a shorter sentence, even if he could show that they were erroneous. As for the lack of a prior identification procedure, defendant had a full opportunity to develop this challenge prior to trial; it is not surprising that his appellate counsel would not think it was worth raising on appeal. Defendant has failed to explain what he thinks his appellate counsel could have done differently or how the outcome of his appeal would have changed had counsel challenged the identification procedure.

ORDER

IT IS ORDERED that defendant Stacey Miller's motion for vacation or reduction of his sentence brought pursuant to 28 U.S.C. § 2255 is DENIED in all respects. FURTHER, IT IS ORDERED that defendant's motion to submit untimely affidavits in support of his

motion is DENIED.

Entered this _29th_ day of December, 2004.

BY THE COURT:

BARBARA B. CRABB
District Judge

DOCKET # 156

U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

MAR - 9 2005

THERESA M. OWENS CLERK
CASE#

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

STACEY MILLER,

          Defendant.

ORDER

04-C-527-C
01-CR-0071-C-02

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The order entered in this case on December 29, 2004, is amended in the following respect: At the beginning of the last paragraph on page 14, the number 30 is deleted and the number 31 is inserted therefor.

In all other respects, the order remains as entered on December 29, 2004.

Entered this _____8th_____ day of March, 2005.

BY THE COURT:

BARBARA B. CRABB
District Judge

1

Copy of this document has been
provided to: S. Miller
& Atty. Vaudreul
this 8th day of Mar, 2005
by _____
S. Vogel, Secretary to
Judge Barbara B. Crabb

CC. USCA

DOCKET # 151
U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

MAR - 9 2005

FILED
THERESA M. OWENS, CLERK
CASE #

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                Plaintiff,

          v.

STACEY MILLER,

                Defendant.

ORDER

04-C-527-C
01-CR-0071-C-02

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendant Stacey Miller has filed a "Petition for a Certificate of Appealability." He has not filed a notice of appeal from the judgment entered in this case on December 30, 2004, although the time for filing such a notice expired on March 1, 2005, the date on which he filed this petition. Despite the lack of a notice of appeal, I will decide the motion for a certificate of appealability, which defendant must have if he is to appeal the denial of his motion for post conviction relief brought pursuant to 28 U.S.C. § 2255. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22. Such a certificate shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2).

1

Copy of this document has been
provided to: Atty. Vaudreul
& S. Miller
this 9th day of Mar 20 05
by S. Vogel
S. Vogel, Secretary to
Judge Barbara B. Crabb

CC: USCA

Before issuing a certificate of appealability, a district court must find that the issues the applicant wishes to raise are ones that "are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S 880, 893 n.4 (1983). In his request for a certificate of appealability, defendant has identified two issues he wants to appeal. I am prepared to issue a certificate of appealability with respect to one of the two issues.

First, defendant contends that trial counsel gave him ineffective assistance. This contention relates to claims numbered 26-29 in his motion. In deciding the motion as to those claims, I found that petitioner had failed to support his allegations with specific details about his counsel's deficiencies. Although I believe that defendant failed to show his entitlement to relief under § 2255 because of his counsel's alleged constitutional deficiencies, I cannot say that a reasonable judge would not make a different decision. Therefore, I will issue a certificate of appealability as to the claims numbered 26-29 in defendant's motion.

Second, defendant contends that the court erred in denying his claim that he was sentenced unconstitutionally by relying on facts not found by a jury beyond a reasonable doubt in violation of Blakely v. Washington, 124 S. Ct. 2531 (2004). In an order dated August 5, 2004, I told defendant that it was premature to raise the claim because the United States Supreme Court had not decided whether the holding in Blakely applied to federal

2

cases. For this reason, I did not order the government to respond to this claim. It was unnecessary to discuss the claim again in the December 29 order because the Supreme Court had not yet decided Booker when I denied petitioner's motion for post conviction relief. Defendant is not entitled to a certificate of appealability on this issue. He has no basis on which to raise a claim under Blakely or Booker. On January 12, 2005, the Supreme Court rendered its opinion in United States v. Booker, 04-104 (U.S. Jan. 12, 2005). It held that defendants in federal criminal cases have a right to a jury determination of any disputed factual subject that increases the maximum punishment. The Court held also that the Sentencing Guidelines are unconstitutional to the extent they require judges to base sentences on facts that are not the product of factfinding by a jury but that the guidelines are not unconstitutional if judges use them for advisory purposes. The Court did not address the retroactivity of its decision on cases on collateral review, leaving it uncertain whether the right has retroactive application. Unfortunately for defendant, on February 2, 2005, the Court of Appeals for the Seventh Circuit resolved the retroactivity uncertainty, at least for motions filed in this circuit asserting the right newly recognized in Booker. In McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005), the court held that the rights recognized in Booker do not apply retroactively on collateral review. The court of appeals characterized the decision as a procedural one and noted that, as a general rule, procedural decisions do not apply retroactively unless they establish one of those rare "'watershed rules of criminal

3

procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'"

Id. at 4 (quoting Schriro v. Summerlin, 124 S. Ct. 2519 (2004)). The court concluded that Booker did not establish a "watershed rule"; "the choice between judges and juries as factfinders does not make such a fundamental difference." Id. The court was persuaded that the Booker decision would not change the process of sentencing in any significant way: defendants would continue to be sentenced as they have been, with the only difference being "the degree of flexibility judges would enjoy in applying the guideline system." Id. Now that the court of appeals has decided that Booker has no retroactive application, defendant cannot succeed in showing that he is entitled to a modification of his sentence based upon that decision. Because this issue is not debatable among reasonable jurists, a court could not resolve the issues differently and the question is not adequate to deserve encouragement to proceed further, I decline to issue a certificate of appealability.

## ORDER

IT IS ORDERED that defendant Stacey Miller's request for a certificate of appealability is GRANTED as to his ineffective assistance of counsel claim and DENIED as

4

to his claim premised on Blakely v. Washington.

Entered this _____8th_____ day of March, 2005.

BY THE COURT:

Barbara B. Crabb

BARBARA B. CRABB
District Judge

5

RIPPLE, *Circuit Judge*, dissenting. In my view, summary affirmance on the basis of a memorandum order issued by the district court should be reserved for the most extraordinary of situations. This principle is especially true when the decision of this court is not the product of the usual processes of decision-making, but of a preliminary screening. Before we truncate the usual appellate procedures, at a minimum, the appeal ought to be facially frivolous, or the writing of the district court should be so extensive that it fairly can be said to be responsive to all the arguments made by the appellant in this court. In any event, our basis of decision should be clear to the Supreme Court of the United States when it reviews our decision if a petition for certiorari is filed.

In the case before us, the appeal cannot be considered facially frivolous. Indeed, both parties have submitted extensive and thoughtful briefs. Nor can the discussion of the issue on appeal by the district court be said to be totally responsive to the presentation of the appellant in this court. Finally, our order in this case, adopting the order of the district court, does not fulfill our obligation to provide the Supreme Court with an adequate explanation of our decision.

Accordingly, I respectfully dissent from the order issued by the court today. I would set this case for oral argument in due course.