UNITED STATES of America, Appellee,

v.

Bob SHERRELL, Appellant.

UNITED STATES of America, Appellee,

v.

Norman DART, Appellant.

Nos. 92–1145, 92–1243.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 18, 1992.

Decided Nov. 18, 1992.

W. Swain Perkins, Thayer, Mo., argued, for appellant.

Terry Derden, Little Rock, Ark., argued, for appellee.

Before McMILLIAN, WOLLMAN, and LOKEN, Circuit Judges.

WOLLMAN, Circuit Judge.

Bob Sherrell and Norman Dart appeal from their respective convictions for possession with intent to distribute methamphetamine, a violation of 21 U.S.C. § 841, and for use of a firearm during a drug trafficking offense, a violation of 18 U.S.C. § 924(c). The sole issue before us is

whether the district court [1] correctly denied Sherrell and Dart's joint motion to suppress evidence. We affirm.

## I.

On March 13, 1991, Special Agent Larry Carver [2] of the Drug Enforcement Administration (DEA) obtained a search warrant from the magistrate judge [3] authorizing him to search the "Sherrill [sic] Trucking facility including all buildings and vehicles located at Route 1 Box 483, Mammoth Springs, Arkansas."

Carver's affidavit submitted in support of the application for the search warrant set forth the following information gathered by law enforcement authorities during their two-year investigation. The investigation began in May 1989 when the Fulton County, Arkansas Sheriff's Department received a telephone call from a person who claimed to be Bob Sherrell's ex-father-in-law. The caller told the sheriff that Sherrell earned his livelihood by hauling drugs in his trucks. Subsequent visits to the premises by a Fulton County surveillance team in late 1989 confirmed that Sherrell was not conducting any trucking business but had constructed a large shop building on the property. On January 17, 1991, Carver flew over the property at a height greater than 3,000 feet in a DEA plane equipped with Forward Looking Infrared Radar (FLIRR). FLIRR detects objects by sensing temperature variations in the landscape within its field of vision. The FLIRR readings showed heat emanating from the shop building. On February 15, 1991, the DEA subpoenaed United Parcel Service's records for Sherrell Trucking. The subpoenaed information revealed that Sherrell Trucking had received multiple deliveries

from companies associated with indoor marijuana cultivation.[4] On March 7, 1991, an Arkansas state police investigator interviewed a cooperating individual (CI) concerning Sherrell. The CI reported that the property was inhabited. (More specifically, the affidavit stated that "[t]he CI stated that anytime he went upstairs that one of the people living on the property would accompany him.") The CI further informed officers that Dart was currently travelling to Harrison, Arkansas to sell a one-pound package of marijuana, which the CI had seen. Carver also entered the property twice prior to the execution of the search warrant, although he testified that he had never come within fifty yards of any residences. On March 11, 1991, the DEA subpoenaed Sherrell Trucking's electric power usage records. Carver stated that in his opinion the power usage of Sherrell's large shop building was consistent with the existence of an indoor marijuana-growing operation.

The Sherrell Trucking facility is located on a country road in a rural area in north Arkansas. Commercial signs on the country road advertise the sale of ice and other items. The entire property has a single address, and all of the utilities are in Bob Sherrell's name. The property is not physically subdivided, except for a dilapidated hog wire fence. The property contains more than thirteen buildings, all of which are connected by an intercom system. No other farms are nearby.

On March 15, 1991, Arkansas state police officers and Carver executed the search warrant. The officers discovered a small rock house on the property, where Norman and Denise Dart resided. The officers discovered in the Dart residence $31,380 in cash, plastic bags of cocaine and metham-

---

1. The Honorable George Howard, Jr., United States *District Judge for the Eastern and Western* Districts of Arkansas.

2. Carver testified at the suppression hearing that he was a 20–year veteran of the DEA and had investigated ten or more indoor marijuana growing operations.

3. The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas.

4. Sherrell Trucking received two deliveries on October 16, 1989, from Hamilton Tech, a California company documented in DEA files as being a supplier of indoor marijuana growing equipment. In November 1989, Sherrell Trucking received a shipment from Agriculture Supply, a California company that specializes in selling drip irrigation equipment to nurseries and greenhouses.

phetamine mixed together, marijuana, and a number of assault firearms. In the sheds next to the Dart residence, the officers discovered $3,280 in cash, marijuana seeds and growing paraphernalia, and more than 512 grams of methamphetamine.

The officers also located a double-wide trailer, which was the residence of Bob Sherrell and his family. The officers discovered $20,000 in cash, four firearms, 367 grams of methamphetamine, and more than 100 grams of cocaine in the trailer.

In total, the officers seized thirty-eight weapons, 890.739 grams of methamphetamine, 118.754 grams of cocaine, 83.8 grams of marijuana, records relating to residency and indoor marijuana-growing techniques, tax returns, and photographs from the various buildings located on the property. These items comprise the evidence that Sherrell and Dart sought to exclude in their suppression motion.

Following the district court's denial of the suppression motion, Sherrell and Dart entered conditional guilty pleas under Federal Rule of Criminal Procedure 11, thus reserving their right to appeal the district court's denial of the suppression motion.

## II.

Our review of the district court's denial of the motion to suppress is governed by several well-established principles. Under *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983), the task of a magistrate issuing a search warrant is to determine whether, in the light of all the circumstances set forth in the affidavit, " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for … conclud[ing]" that probable cause existed.' " *United States v. Lueth*, 807 F.2d 719, 724 (8th Cir.1986) (*quoting Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (citations omitted)). The magistrate's determination of probable cause is entitled to great deference. *Lueth*, 807 F.2d at 724–25. We will uphold the district court's

disposition of the motion to suppress unless it is clearly erroneous. *Id.* at 725.

■ Appellants argue first that the search warrant was invalid because its description of the place to be searched lacked the particularity required by the Fourth Amendment.

The Fourth Amendment requires that warrants describe the "place to be searched" with particularity. A search warrant's description satisfies the Fourth Amendment if it is " 'sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched….' " *United States v. Caves*, 890 F.2d 87, 92 (8th Cir.1989) (citations omitted). We observed further in *Caves* that "[t]he underlying measure of adequacy in the description is whether given the specificity in the warrant, a violation of personal rights is likely." *Id.* (citations omitted). In *United States v. Ellison*, 793 F.2d 942, 947 (8th Cir.1986), *cert. denied*, 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986), we observed that the "test for determining the adequacy of the description of the place to be searched is whether it enables 'the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched.' " *Id.* (citations omitted).

This case does not present the potential dangers we identified in *Caves* or *Ellison*. Appellants do not contest that the search warrant description embraced all of the locations searched by the officers on the Sherrell premises. Because appellants concede that the warrant was sufficiently inclusive, the only contested issue is whether the warrant description was sufficiently particular. The Sherrell compound is isolated and is located in a rural area. Because Carver, who had previously entered the property and observed it from air and from land, accompanied the executing officers, there was no chance the officers would search the wrong premises. *See United States v. Whaley*, 781 F.2d 417, 421 (5th Cir.1986). Moreover, we agree with

the district court's finding that the affidavit informed the magistrate judge of the quasi-residential character of the premises through the reference to the "people living on the property." Consequently, we affirm the district court's holding that the warrant described the place to be searched with the particularity required by the Fourth Amendment.

Appellants next argue that even if the warrant satisfied the particularity requirement, the officers purposely withheld information from the magistrate judge, thus rendering the warrant invalid. Sherrell lists nineteen alleged omissions from the affidavit. In their respective briefs and at oral argument, however, both appellants focused on one alleged omission: the officers' knowledge of the existence of three separate occupied residences on the property. Accordingly, we confine our analysis to this alleged omission.

■ We have held that an omission will vitiate a warrant affidavit only if the defendant can show: "(1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading ...; and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Lueth*, 807 F.2d at 726 (*quoting United States v. Reivich*, 793 F.2d 957, 961 (8th Cir.1986)).

■ Appellants fail to meet their burden on either of the *Lueth* elements. First, they do not show that Carver intentionally or recklessly misled the magistrate judge as to the number of dwellings on the property. Carver affirmatively informed the magistrate judge that there were people living on the property and that multiple buildings would be searched. Although Carver had entered the premises twice and flown over it as well, the district court found that the officers did not know that three separate residences existed on the property until they served and executed the search warrant. D.Ct. Order of July 17, 1991, at 4. This finding is not clearly erroneous.

Second, appellants fail to show that the alleged omission of the information concerning the three residences was material, in that its inclusion would have cast doubt upon the existence of probable cause to search the Sherrell premises. Carver's affidavit chronicled a two-year investigation involving postal and utility records, detailed informant testimony, and first hand observations. The affidavit referred to the fact that there were people living on the property. Even if we accept appellants' assertion that the officers knew that three separate residences existed on the premises, we cannot agree that the inclusion of this information in the affidavit would have vitiated the showing of probable cause regarding the Sherrell premises.

Appellants also argue that the warrant was not supported by probable cause and that the officers obtained information submitted to the magistrate judge through illegal searches.

As noted earlier, we give great deference to a magistrate judge's determination of probable cause, and we limit our role to ensuring that the magistrate judge had a substantial basis for concluding that probable cause existed. *Lueth*, 807 F.2d at 724–25. Given the two-year chronology of the investigation and the corroboration of the information set forth in the affidavit, we cannot say that the magistrate judge lacked a substantial basis for concluding that probable cause existed to search Sherrell's premises.

Without detailing them, we agree with the district court's rulings on the several other challenges to the validity of the search warrant.

We have considered the remainder of appellants' arguments, and we find that they are without merit.

The judgment of the district court is affirmed.