STATE of North Dakota, Plaintiff and Appellee,

v.

Clayton RUNCK, Jr., Defendant and Appellant.

Crim. No. 940270.

Supreme Court of North Dakota.

July 27, 1995.

Allen Kipp Albright (argued), Asst. State's Atty., Fargo, for plaintiff and appellee.

George E. Duis (argued), Fargo, for defendant and appellant.

LEVINE, Justice.

Clayton Runck, Jr., appeals from the judgment of conviction and the sentence imposed upon a jury verdict finding him guilty of theft. We affirm.

On May 14, 1993, the State charged Runck with theft for possession of farm chemicals stolen in Minnesota. On July 1, 1993, the State filed an amended complaint also charging Runck with possession of tires stolen in Minnesota. The charge relating to the farm chemicals was dismissed upon motion of the State.[1] Runck was tried on the tire charge. A jury found Runck guilty. Judgment of conviction was entered and Runck appealed, challenging, among other things, the validity

---

1. The State informed us in its brief: "The Federal Government eventually took over prosecution of the case involving the farm chemicals."

of the issuance and execution of three search warrants.

On May 13, 1993, Detective Budd Warren, Cass County Sheriff's Department, applied for a warrant to search "all storage buildings, excluding residences" on the "farmstead owned and operated by Lanny D. Runck and Craig A. Runck of Route 1, Box 77, Durbin, North Dakota" (hereinafter referred to as the Runck farmstead), for certain described farm chemicals. The application was supported by Warren's affidavit which set forth the details of the theft of farm chemicals from three Minnesota farm-related businesses by Mark Matuska, who named Runck as a co-conspirator, the two men having met and become friends at the N.D. State Penitentiary. The stolen chemicals were stored in two buildings at the Runck farmstead. On May 13, 1993, a magistrate issued the requested warrant. A search on May 14, 1993, resulted in the seizure of several boxes of chemicals found in one of the buildings.

On May 14, 1993, Lt. Arland Rasmussen, Cass County Sheriff's Department, applied for a second warrant to search "a small wood framed structure located just to the south of the main residence" on the Runck farmstead, and a "large gray four-door cadillac, North Dakota license plate 38397, located in a storage building" on the farmstead. The application was supported by Rasmussen's lengthy affidavit relating that in a May 14 search of the Runck farmstead, officers recovered approximately $60,000 worth of farm chemicals believed to have been stolen in the Minnesota burglaries; that not all of the chemicals placed in one location by Matuska and Runck were found there, and that Rasmussen believed that more chemicals would be found in a Cadillac on the Runck farmstead and in Runck's mother's residence, which had not been used recently and which Runck had told Matuska would be a suitable location for storing some of the stolen farm chemicals. A magistrate issued the requested warrant.

Search of the Cadillac resulted in the seizure of several containers of farm chemicals. Search of Runck's mother's residence resulted in the discovery of a number of tires, which led to a request for a third search warrant.

On June 25, 1993, Detective Warren applied for a third warrant to again search Runck's mother's residence and "all out buildings and storage buildings" on the Runck farmstead for nine tires. The application was supported by Warren's affidavit relating that the search of Runck's mother's residence uncovered "six (6) Cooper (brand) Discoverer (make) raised white letter, mud and snow radial tires .. in the bathtub," and that an assortment of semi-trailer tires were found, which Matuska said he had stolen in Minnesota and which corresponded to tires stolen from Nepstad Oil Company in Hendrum, Minnesota. A magistrate issued the requested warrant and a search resulted in seizure of the described tires.

Runck argues that the warrants and their execution violated Rule 41, N.D.R.Crim.P.[2] Rule 41, N.D.R.Crim.P., was drawn from Rule 41, F.R.Crim.P., and therefore, we give great weight to the construction placed on it by the federal courts. *State v. Rueb*, 249 N.W.2d 506 (N.D.1976). Rule 41 contains a number of ministerial requirements. Rule 41 also incorporates the Warrant Clause requirements of the Fourth Amendment to the United States Constitution that no search

---

**2.** Rule 41, N.D.R.Crim.P., provides in part:
  "*(c) Issuance and Contents.*
  "(1) *Warrant Upon Affidavit or Sworn Recorded Testimony.* A warrant other than a warrant upon oral testimony under subdivision (c)(2) may issue only on an affidavit ... establishing the grounds for issuing the warrant. If the State or Federal magistrate is satisfied that grounds for the application exist or that there is probable cause to believe they exist, the magistrate shall issue a warrant identifying the property or person to be seized and naming or describing with particularity the person or place to be searched....

  "*(d) Execution and Return With Inventory.* The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, if that person is present, or, if not present, shall leave the copy and receipt at the place from which the property was taken.... The magistrate upon request shall deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant."

"warrants shall issue but upon probable cause ... and particularly describing the place to be searched." Federal courts have construed Rule 41, F.R.Crim.P., so that a violation of the ministerial aspects of the rule very seldom results in the suppression of evidence. *See, e.g., United States v. Kelly,* 14 F.3d 1169 (7th Cir.1994) (a copy of the search warrant was never given to the defendant or his counsel before trial) *United States v. Gatewood,* 786 F.2d 821 (8th Cir. 1986); *United States v. Luk,* 859 F.2d 667 (9th Cir.1988). But a violation of Rule 41(d) can lead to exclusion "when there is a showing of prejudice, or an intentional and deliberate disregard of the rule." *United States v. Kelly, supra,* at 1173. And, of course, a violation that also offends the Warrant Clause of the Fourth Amendment, would call for suppression. *United States v. Hornick,* 815 F.2d 1156 (7th Cir.1987).

■ Runck argues that execution of the warrants violated Rule 41, N.D.R.Crim.P., because "a copy of the Warrant was not served, and the copy was not dated, signed, and all of the blank spaces were blank, and none of the Affidavits were signed where they were supposed to be on the copies." Detective Warren testified at the suppression hearing that they always bring the original search warrant, signed by a judge, to the premises to be searched and that they "always show that original warrant to the person at the property." Warren admitted that the warrant copy left with the farmhand who lived on the property was undated and unsigned, but testified that was "the way that search warrants are always done on a routine basis." Warren and his department are bound to follow Rule 41. However, their noncompliance does not evidence a deliberate institutional disregard that requires a judicial response to protect the integrity of our system. *See, e.g., Madison v. North Dakota Department of Transportation,* 503 N.W.2d 243, 246–47 (N.D.1993). However, continued noncompliance, if "commonplace," may warrant suppression. *Cf., State v. Steffes,* 500 N.W.2d 608 (N.D.1993). Runck has not shown that he was prejudiced by the fact that the copy left at the farmstead was undated and unsigned. Nor has Runck shown either "an intentional and deliberate disregard of the rule or a Fourth Amendment violation." *United States v. Kelly, supra,* 14 F.3d at 1173. Under the circumstances of this case, we conclude that leaving an unsigned and undated copy of the search warrant at the farmstead was a ministerial violation of Rule 41, N.D.R.Crim.P., that does not warrant suppression of the evidence seized upon execution of the warrant.

■ Runck argues that the warrants violated Rule 41, N.D.R.Crim.P., because they did not describe with particularity the place or building to be searched, thereby challenging the validity under the Fourth Amendment. We disagree. A description is sufficient if it enables the officer with the search warrant, with reasonable effort, to ascertain and identify the place intended. *Steele v. United States,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925). *See also United States v. Bonner,* 808 F.2d 864, 866 (1st Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987) (The test is whether the description of the place to be searched is sufficient " 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.' " Citations omitted.). The degree of specificity required in a warrant may vary depending upon the nature of the place to be searched. *State v. Dallmann,* 441 N.W.2d 912 (N.D.1989). The required specificity "differs for rural and urban areas and depends heavily on the facts of each case." *United States v. Dorrough,* 927 F.2d 498, 500 (10th Cir.1991). In *United States v. Sherrell,* 979 F.2d 1315, 1316 (8th Cir.1992), a search warrant authorized search of the "Sherrill [sic] Trucking facility including all buildings and vehicles located at Route 1 Box 483, Mammoth Springs, Arkansas." The court held that the warrant described the place to be searched with sufficient particularity, where the facility "is isolated and is in a rural area," the officer obtaining the warrant had "previously entered the property," and "there was no chance the officers would search the wrong premises." *Id.* at 1317. In *People v. Smith,* 21 Cal.App.4th 942, 26 Cal.Rptr.2d 580, 582 (Cal.App.), *cert. denied,* — U.S. ——, 115

S.Ct. 254, 130 L.Ed.2d 175 (1994), also dealing with the particularity requirement of the Fourth Amendment, an officer obtained a warrant to search certain "premises" and " 'outbuildings ... used in connection with or within the curtilage of said premises.'" The court held that an "outbuilding" within the 40–acre parcel upon which the mobile home was located, was "particularly described." 26 Cal.Rptr.2d at 581. "[A] warrant to search 'premises' located at a particular address is sufficient to support the search of outbuildings and appurtenances in addition to a main building when the various places searched are part of a single integral unit." 26 Cal.Rptr.2d at 585, quoting *People v. Dumas*, 9 Cal.3d 871, 881, fn. 5, 109 Cal.Rptr. 304, 512 P.2d 1208 (1973).

In this case, the three search warrants authorized searches of (1) "all storage buildings, excluding residences," (2) "a small wood framed structure located just to the south of the main residence" and a "large gray four-door cadillac, North Dakota license plate 38397," and (3) "a small, wood framed structure located just to the south of the main residence" and "all out buildings and storage buildings" on the Runck farmstead. The descriptions of the places authorized to be searched were sufficient so that the executing officers could "with reasonable effort ascertain and identify the place intended." *Steele v. United States, supra*, 267 U.S. at 503, 45 S.Ct. at 416, 69 L.Ed. at 760. In each warrant, the place or building to be searched was located within "a single integral unit," *People v. Smith, supra*, 26 Cal.Rptr. at 585,—the Runck farmstead. Detective Warren knew that Matuska's description of the Runck farmstead was accurate, and "there was no chance the officers would search the wrong premises." *United States v. Sherrell, supra*, 979 F.2d at 1317. We conclude that the search warrants described "with particularity the person or place to be searched." Rule 41(c)(1), N.D.R.Crim.P. The search warrants satisfied the particularity requirements of both Rule 41, N.D.R.Crim.P., and the Fourth Amendment to the United States Constitution.

█ Runck acknowledges that the officers were lawfully in Runck's mother's residence when they found tires in the bathtub, thus conceding any challenge of the first two warrants, but asserts that there was no probable cause for issuance of the third warrant. A totality-of-the-circumstances analysis is used in determining if there is probable cause for a search warrant under the Fourth Amendment to the United States Constitution:

"[W]e conclude that it is wiser to abandon the 'two-pronged test' established by our decisions in *Aguilar* and *Spinelli*. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." (Citations omitted.)

*Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (Ill.), *rehearing denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983).

█ Runck argues that there was no probable cause for issuance of the third search warrant because "[t]here is no way that Serial Numbers could have been taken off of the tires without being handled." He asserts that moving the tires in the second search to observe the serial numbers violated *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).

In *Arizona v. Hicks, supra*, the question was whether moving objects to record their serial numbers was merely a search of evidence in plain view, or whether such a search required probable cause. A bullet was fired through the floor of Hicks's apartment. Police officers entered the apartment to search for the shooter, victims and weapons. Officer Nelson noticed two sets of expensive stereo components. Suspecting they were stolen, Officer Nelson read and recorded serial numbers, moving some of the compo-

nents to do so. The court held that recording serial numbers in plain view was permissible, but moving the equipment to discover the serial numbers was a search that required probable cause to believe the equipment was stolen. 480 U.S. at 324–25, 107 S.Ct. at 1152, 94 L.Ed.2d at 354–55.[3]

Execution of the second search warrant in this case led to the discovery of six tires "stacked up next to each other in the bathtub" of the residence, which, together with other information, ultimately led to the issuance of the third search warrant in this case. The third search warrant authorized a search for the following tires:

"Two (2) Cooper P185 75 R14 Raised White Letter Mud and Snow Radial Tires.

"Four (4) Cooper 235 75 R 15 Raised White Letter Mud and Snow Radial Tires.

"Two (2) 10.00–20 Powerking Cross Bar Tractor/trailer Tires.

"One (1) 10.00–20 Firestone Super Traction Tires."

Runck asserts that the officers must have moved the tires in order to have recorded their serial numbers. The only evidence on handling or moving the tires found in the bathtub was provided by Detective Warren, who testified that neither he nor anyone else did "anything other than just visually observe them in the bathtub." Warren testified that they "made a note of the brand and the tread design, possibly the size of the tires ... just from physically observing them, without actually even touching them." Thus, the only evidence on the subject shows that the tires were not moved and the factfinder found that evidence to be credible.

Despite Runck's assertion to the contrary, moving the tires was not the only way the officers could have obtained the descriptive numbers on the tires. Warren testified that after the second search was conducted, Matuska said he had stolen tires from the Nepstad Oil Company in Hendrum, Minnesota, and that, as far as he knew, the tires were still on Runck's property. Warren testified

that he then contacted the Nepstad Oil Company and, based on the information provided by Matuska and Nepstad, sought a third search warrant. In his affidavit in support of his application for the third search warrant, Warren said that Nepstad informed him that two Cooper Discoverer "P18575R14" and four Cooper Discoverer "23575R15" mud and snow radial tires, along with "two 10.00–20 Powerking Cross Bar tractor/trailer tires" and "one 10.00–20 Firestone Super Traction" retreaded tires had been stolen. Thus, the tire descriptions in the search warrant were provided by the owner of the stolen tires, not by the officers.

■ Runck asserts that there was no probable cause for issuance of the warrants because the State "had no history that Matuska was a reliable Informer." We disagree. Before requesting the first two search warrants, the officers verified what Matuska had told them. The officers were able to verify that Matuska had a basis for knowing what he told the officers and they were able to verify that what he told them was reliable through their own personal knowledge and conversations with other North Dakota and Minnesota authorities. The officers were able to verify what Matuska told them about the tires found in the second search before requesting the third warrant. Furthermore, by the time the officers sought the third warrant, Matuska's credibility had certainly been enhanced by the good results obtained in executing the first two search warrants based on his information.

We conclude that in issuing the search warrants in this case, "the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Illinois v. Gates, supra,* 462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548, quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708 (1960) (overruled in part on other grounds, *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). Under the totality of the circum-

---

**3.** *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), makes this court's decision in *State v. Riedinger,* 374 N.W.2d 866 (N.D. 1985), no longer controlling. Officers executing a search warrant for concealed controlled substances found a microwave oven. One officer

picked up the oven and held it while another officer copied the serial number. A majority of this court said that "the officer's reasonable suspicions that the oven was stolen goods justified the very minimal intrusion on privacy to check the serial number." *Id.* at 875.

stances set forth in the affidavits supporting the search warrant requests, the magistrate in each request was presented with a substantial basis for deciding that there was "a fair probability that contraband or evidence of a crime [would] be found" in the buildings sought to be searched. *Illinois v. Gates, supra,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. Even under the *Aguilar–Spinelli*[4] test, which this court used for eighteen years before *State v. Ringquist,* 433 N.W.2d 207 (N.D.1988), and which remains relevant, there was probable cause for issuance of the warrants. In each instance, the magistrate was "informed of enough underlying circumstances to ... determine that the informant's observations regarding the commission of the crime were accurate (basis of knowledge prong) and that the informant was credible or his information was reliable (veracity prong)." *State v. Ringquist, supra,* 433 N.W.2d at 211.

We have considered the other issues raised by Runck, and have concluded that the asserted errors could not have affected the verdict and would not affect our decision. No productive purpose would be served by addressing any of the other issues raised.

Affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

---

**4.** *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).