2015 ND 43

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**Gayne Alan GASAL, Defendant and Appellant.**

No. 20140147.

Supreme Court of North Dakota.

Feb. 12, 2015.

Katherine Marilyn Naumann, Assistant State's Attorney, Jamestown, ND, for plaintiff and appellee.

John Tainter Goff, Fargo, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Gayne Alan Gasal appeals from a district court criminal judgment entered upon a jury conviction of hunting without a license and from a district court order denying his motions to suppress evidence obtained after the issuance of a search warrant on his farmstead for two hunting rifles and from statements he made during conversations with the game warden. Gasal argues the district court erred by denying the motion to suppress evidence obtained by an invalid search warrant and by denying the motion to suppress statements obtained in violation of the *Miranda* requirements. We affirm.

I

[¶ 2] In November 2012, Game Warden Mark Pollert received information Gayne Gasal shot a deer outside the area authorized by his gratis deer tag. After observing two vehicles coming from the described area, the game warden stopped the white pickup truck driven by Gasal and inquired about the deer. Gasal told the game warden the deer was in the truck driven by his son. The game warden asked if he could follow Gasal to his farmstead to look at the deer. Gasal agreed.

[¶ 3] The game warden followed Gasal to his farm where he met with Gasal's son, Jarred Gasal, and a minor grandson. The deer was tagged with the grandson's gratis deer tag. The game warden interviewed all three of the Gasal family members, together and separately. The game warden recorded the interviews without the Gasals' knowledge. The game warden claimed he witnessed the alleged violation and did not tell the Gasals about receiving information from another source. The Gasals told the game warden the grandson shot the deer using his Ruger rifle. The other rifle used by the hunting party was a Browning. The game warden seized the deer carcass, recovered the bullet and had the bullet analyzed by the State Crime Lab. The analyst informed the game warden that it is unlikely the bullet was fired from a Ruger rifle. Based upon the Gasals' incongruent story and the lab report, the game warden applied for search warrants for the Ruger and Browning rifles.

[¶ 4] Search warrants were issued for the residences of Gayne Gasal and Jarred Gasal on December 10, 2012 at 4:15 p.m., but the record includes only the search warrant for the "Ruger M77" at Jarred Gasal's residence. Both rifles were retrieved from Gayne Gasal's residence after Jarred Gasal voluntarily surrendered the Ruger rifle and Gayne Gasal surrendered the Browning rifle. A subsequent crime lab report indicated that the Ruger rifle did not fire the bullet lodged in the deer carcass and that the Browning rifle could not be identified or eliminated as firing the bullet lodged in the deer carcass.

[¶ 5] Gasal was charged with hunting without a license. Gasal moved to suppress evidence, alleging his Fourth Amendment rights were violated because the warrant was not dated. Gasal also moved to suppress statements he made to the game warden, arguing the game warden violated his right against self-incrimination, a violation of the *Miranda* requirements. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court denied Gasal's motions to suppress, and the jury found him guilty of hunting without a license. Gasal appeals.

II

[¶ 6] When reviewing a district court's decision on a motion to suppress:

"We will defer to a trial court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence."

*State v. Genre,* 2006 ND 77, ¶ 12, 712 N.W.2d 624 (citations omitted). "Questions of law are reviewed under the de novo standard of review." *Id.* "Whether a suspect is 'in custody' and entitled to a *Miranda* warning is a mixed question of law and fact and, therefore, is fully reviewable on appeal." *Genre,* at ¶ 23.

### III

■ [¶ 7] Gasal argues the search warrants are facially invalid because they were not dated, nor were the supporting applications and affidavit dated, requiring the evidence seized as a result of the search to be suppressed. Gasal argues the absence of a date violates Rule 41(c)(1)(D), N.D.R.Crim.P., which provides, "The warrant must be directed to a peace officer authorized to enforce or assist in enforcing any law of this state. It must command the officer to search, within a specified period of time not to exceed ten days, the person or place named for the property or person specified." Gasal argues the absence of a date renders the warrant facially invalid because he could not determine whether the warrant was valid when executed or if it was executed within the ten-day period. The district court found:

"In *State v. Bollingberg,* 2004 ND 30, ¶ 19, 674 N.W.2d 281 it was held that technical errors do not invalidate a warrant. In this instance, however, omis-

sion of the date is not a technical error, or any sort of error, since placing the issuance date on a search warrant is not required by Rule 41 N.D.R.Crim.P. or N.D.C.C. Chapter 29–29. There is no Fourth Amendment violation."

■ [¶ 8] Rule 41, N.D.R.Crim.P., "is designed to implement the provisions of Article I, Section 8, of the North Dakota Constitution and the Fourth Amendment to the United States Constitution." N.D.R.Crim.P. 41, Explanatory Note. Suppression is the appropriate remedy for violations of the provisions of N.D.R.Crim.P. 41 under some circumstances. *See, e.g., Roth v. State,* 2007 ND 112, ¶ 31, 735 N.W.2d 882; *State v. Fields,* 2005 ND 15, ¶ 14, 691 N.W.2d 233. "However, not every violation of N.D.R.Crim.P. 41 results in suppression of evidence." *State v. Scholes,* 2008 ND 146, ¶ 12, 753 N.W.2d 377.

■ [¶ 9] "Rule 41, N.D.R.Crim.P., was drawn from Rule 41, F.R.Crim.P., and therefore, we give great weight to the construction placed on it by the federal courts." *State v. Runck,* 534 N.W.2d 829, 831 (N.D.1995) (citing *State v. Rueb,* 249 N.W.2d 506 (N.D.1976)). "Federal courts have construed Rule 41, F.R.Crim.P., so that a violation of the ministerial aspects of the rule very seldom results in the suppression of evidence." *Runck,* at 832. "But a violation of Rule 41(d) can lead to exclusion 'when there is a showing of prejudice, or an intentional and deliberate disregard of the rule.'" *Id.* (quoting *United States v. Kelly,* 14 F.3d 1169, 1173 (7th Cir.1994)). Gasal argues the absence of a date violates Rule 41, rendering the warrant invalid. The district court found the date was not a requirement under Rule 41.

[¶ 10] In *Runck,* this Court concluded that "leaving an unsigned and undated copy of the search warrant at a farmstead

was a ministerial violation of Rule 41, N.D.R.Crim.P., that does not warrant suppression of the evidence seized upon execution of the warrant." 534 N.W.2d at 832; *see also United States v. Smith,* 720 F.3d 1017, 1020 (8th Cir.2013) (finding a warrant with an incorrect date a mere technicality that did. not invalidate the search warrant). Even if the omission of the date is a ministerial error, there must be "a showing of prejudice, or an intentional and deliberate disregard of the rule." *Runck,* at 832 (quoting *Kelly,* 14 F.3d at 1173). *Runck* acknowledges that while the unintentional absence of a date would not invalidate a warrant under the prejudicial test, continued noncompliance or common practice of executing warrants without a date may warrant suppression. 534 N.W.2d at 832.

[¶ 11] Gasal argues he was prejudiced because he could not determine the validity of the warrant in terms of staleness, noting the incident and initial interviews took place over a month before officers executed the warrant. Gasal offers no evidence of prejudice or how he would have acted differently. Moreover, Gasal, after speaking with his lawyer, voluntarily showed law enforcement where the rifle was located. Jarred Gasal also voluntarily gave law enforcement his son's rifle. Gasal did not argue either "an intentional [or] deliberate disregard of the rule." *Runck,* 534 N.W.2d at 832 (quoting *Kelly,* 14 F.3d at 1173). The game warden testified he did not intentionally omit the date on the warrant. He testified the State's Attorneys usually prepare a warrant for him, but in this case, he prepared· the warrant himself, using a template faxed over from a police department. The error was not deliberate or an intentional disregard of· the rule.

[¶ 12] Alternatively, Gasal argues the absence of a date on the warrant is clerical error. Gasal relies on Rule 36, N.D.R.Crim.P., to explain and define "clerical errors." Gasal notes under Rule 36, "if the error or omission is indeed a judicial error, rather than a clerical mistake, it is not within the purview of the rule." *United States v. Kaye,* 739 F.2d 488, 491 (9th Cir.1984). However, the Eighth Circuit explained Rule 36 is inapplicable in search warrant cases because Rule 36 analyzes "the ability of a district court to correct its own mistake in an order, judgment, or other parts of the record under Federal Rule of Criminal Procedure 36." *Smith,* 720 F.3d at 1020 (finding Rule 36 cases irrelevant to determination of whether a clerical error invalidates a search warrant). We agree with these federal courts and conclude Rule 36, N.D.R.Crim. P., does not apply to search warrants and does not render these warrants invalid.

[¶ 13] Omission of the date on the warrant does not itself require suppression of the evidence seized upon execution. Nor is suppression required without proof of prejudice or intentional disregard for the rule. The district court did not err in denying Gasal's motion to suppress evidence based upon the absence of the date on the warrant and without proof of prejudice or intentional disregard of Rule 41. The decision is supported by competent evidence and is not contrary to the manifest weight of the evidence.

IV

[¶ 14] Gasal argues the district court erred by failing to suppress statements obtained in violation of the *Miranda* requirements. The district court found no Fifth Amendment violation occurred because the game warden never became coercive or reached the kind of restraint associated with *Miranda* requirements.

[¶ 15] "In *Miranda v. Arizona,* 384 ·U.S. 436, 444, 86 S.Ct. 1602, 16

L.Ed.2d 694 (1966), the United States Supreme Court held that a defendant's statements during custodial interrogation were inadmissible in criminal proceedings unless procedural safeguards had been employed to secure the privilege against self-incrimination afforded by the Fifth Amendment to the United States Constitution." *State v. Beaton*, 516 N.W.2d 645, 648 (N.D.1994). The Supreme Court observed that "[u]nless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice." *Miranda*, 384 U.S. at 458, 86 S.Ct. 1602.

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

*State v. Fasching*, 453 N.W.2d 761, 763 (N.D.1990) (quoting *Miranda*, at 444, 86 S.Ct. 1602).

[¶ 16] "A suspect is in custody when there is a formal arrest or restraint on the suspect's freedom of movement to the degree associated with a formal arrest." *Genre*, 2006 ND 77, ¶ 23, 712 N.W.2d 624. "When determining if a person is subject to custodial interrogation the court examines all circumstances surrounding the interrogation and considers what a 'reasonable man in the suspect's position would have understood his situation.'" *Id.* (quoting *State v. Martin*, 543 N.W.2d 224, 226 (N.D. 1996)).

[¶ 17] "Whether a suspect is 'in custody' and entitled to a *Miranda* warning is a mixed question of law and fact and, therefore, is fully reviewable on appeal." *Genre*, 2006 ND 77, ¶ 23, 712 N.W.2d 624.

"A district court's conclusions concerning custody are reviewed under the 'clearly erroneous' standard and the circuit court 'must affirm unless the decision of the district court is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or in light of the entire record we are left with a firm and definite conviction that a mistake has been made.'"

*United States v. Griffin*, 922 F.2d 1343, 1347–48 (8th Cir.1990) (quoting *United States v. Jorgensen*, 871 F.2d 725, 728 (8th Cir.1989)).

[¶ 18] "[T]he relevant factors to be considered in making a determination of custody include an accused's freedom to leave the scene, and the purpose, place and length of the interrogation." *Griffin*, 922 F.2d at 1348. The Eighth Circuit explained:

"This inquiry into the indicia of custody has generally focused on an examination of (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm

tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

"While the foregoing list is decidedly non-exhaustive, the presence or absence of these particular indicia of custody have been influential in this court's assessment of the totality of the circumstances surrounding an official interrogation. The first three of these factors may be fairly characterized as mitigating factors, that is to say the affirmative presence of one or more of these factors during questioning would tend to mitigate the existence of custody at the time of the questioning. Conversely, the remaining three factors may be characterized as coercive factors, which is to say that the affirmative presence of one or more of these factors during questioning would tend to aggravate the existence of custody."

*Griffin*, at 1349.

[¶ 19] The district court, reviewing each factor, found, "When everything is taken into consideration this is not a custodial situation. Undoubtedly the Gasal family was restricted to some degree by [the game warden], but it must be remembered that Gayne Gasal consented to the investigation and questioning.... The situation, however, never became coercive or reached the kind of restraint associated with an arrest." The district court found the game warden never told the Gasals they were under arrest or even threatened arrest, and the sort of restraints normally associated with arrest or custody were absent. The court also found Gasal willingly allowed the game warden onto his farm and made no effort to exclude the game warden or terminate the interview. It considered that the game war-

den lied to the Gasals when he told them he witnessed the alleged violation but found the game warden did not use strong arm tactics or intimidation, no police dominated atmosphere existed that would effect the suspect's will to resist self-incrimination and the end of the interview did not result in arrest. We conclude no *Miranda* violations occurred and Gasal's Fifth Amendment rights were not violated. The district court's findings are supported by evidence and are not clearly erroneous.

## V

[¶ 20] The district court did not err by failing to suppress statements obtained in violation of the *Miranda* requirements. The omission of the date on the warrant does not warrant suppression of the evidence seized upon execution of the warrant because no prejudice or intentional disregard for the rule occurred. The search warrant was not facially invalid. We affirm the district court criminal judgment and order denying Gasal's motions to suppress evidence.

[¶ 21] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, and CAROL RONNING KAPSNER, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.